Thank you. Please be seated. I would say good morning, Your Honors, but it's five after twelve, so good afternoon. Thanks, Mr. Brown. Thank you for your patience. Well, it was an interesting argument, no doubt. We always aim to put a CLE component in something. I'll bring it to my students. Sorry, we will hear the case of, as I said earlier, United States v. I say Hoey, is that correct? Correct. United States v. Hoey. Mr. Bryan. Thank you, Your Honors. May it please the Court. I'd like to discuss this afternoon with the Court the issue involving the grouping analysis under the grouping guideline in which Mr. Hoey's contention is that the two obstruction counts should have been grouped together. And I submit there are three reasons why that is so. Number one, under paragraph B of the grouping guideline, the obstruction counts involved a common scheme and plan and closely related societal interest. Second, that the government agreed in the plea agreement that paragraph B of the grouping outline applied here. And number three, that under paragraph C, which is an additional ground, that the obstruction counts were adjustments to the drug count and therefore should have been grouped under paragraph C. Now, before I get to those three, I just want to address one thing, and that is the standard of review. I submit that we are in a de nouveau standard of review, not plenaire. And I point the Court to the appendix, page 508, in which counsel at the resentencing said, essentially, I'm relying on the pre-sentence report and the plea agreement for her position. Well, the pre-sentence report and the plea agreement both were very clear. Pre-sentence report and plea agreement said paragraph B applies. The two obstruction counts should be grouped together. So I submit it's a preserved issue. Turning to the first reason, which deals with paragraph B of the guideline, of the grouping guideline. But if it were plenaire review, you'd have a difficult road to hoe, would you? Not just because generally plenaire is harder, but because the real question is, in which sequence do you apply the two different grouping rules, B and C? And there's very little authority on that. And the one court that I've seen, I think it was one of our sister circuits, that actually addressed that goes against you. So it's a little hard to see how it could be plain error for the district court not to have come to a conclusion that, as far as I know, no other court has come to. The government relies on the Jones case from the Fourth Circuit, and that's true. I've looked at that case, and I would say its analysis is Mr. Hoey's position is incorrect, that the guideline, as we argue, is the way it should be interpreted. I don't think this Court has explicitly held in the opposite, but I would point to the Barack case. I looked at it, and it doesn't come out and say it, but I'd say the method of analysis was along the lines of what I am urging this Court here. Roberts. Okay. Fair enough. Turning to Paragraph B, Paragraph B of the grouping guideline states that if it's part of a common scheme or plan and if there are closely related societal interests, the count should be grouped. Well, here, there is a common scheme and plan, and the common scheme and plan was that to obstruct the grand jury investigation that was investigating Mr. Hoey. Clearly, that was it. The societal interests, I submit, are clearly or closely related. The acts that were committed here were the societal interest is in investigating this crime. It was the grand jury investigating the crime. It was the United States Attorney's Office conducting the grand jury investigation. In fact, that so the two of those are closely related. They're really two sides of the same coin. You know, I wouldn't necessarily disagree with that. If certainly if we had a case where someone was charged with these two counts of obstruction alone as just stand-alone crimes, it would seem to me that the grouping rules would operate exactly the way, or at least it would be a very strong argument, that the grouping rules would apply the way you argue. But the problem here is that the obstruction counts also interrelate with the substantive count in a different way. So why I said it's really a matter of sequencing is I take it your argument is that step one would be to group the two obstruction counts and step two would then be to use the two obstruction counts having been grouped as a single enhancement to the narcotics charge. Yes. Yes, Judge Lynch. Whereas the problem is that B, am I getting it wrong? Which one is B and which one is C? The other rule that's in play here says that if there are multiple obstruction charges, you apply one of them as an obstruction and the other one then gets whatever treatment it would get under the grouping rules. And so if you apply that rule first and you make one of the two obstruction counts an enhancement and disregard it from then on, you still have the other one floating around and you have nothing to group as between the two obstruction counts. You're saying we do it the other order. Yes, I do, Judge. So why do we do the sequencing that way? Or is this just an ambiguity in how the guidelines are constructed that it doesn't tell us? I think there is clear guidance in the rules of what you do. And it would be actually in the grouping. I'm using grouping guidelines, 3D 1.2, grouping guidelines. Application Note 8, there's a provision in there that says background. And it says exactly what you just said, Judge Lynch, do we group it first? And it says the first step is to group closely related counts. So I would submit that that's the guidance that says then you look at the obstruction counts and you make the determination of whether they're closely related. And it would make sense. So reprise for me, please, Mr. Bernstein. Yes, Mr. Bernstein. The two obstructions here. Yes. One was conborning. Yes. And one, and it's, I would say, Judge Hall, that there was a charging decision made, which is valid, that, you know, you can charge one as perjury under perjury statute and charge another as obstruction. The question is whether it was a charging decision also that really what they were talking about is substantially the same harm. That's what the grouping guideline is talking about, essentially. The count 2, which was dealing with perjury, if you read the count, it's saying what is it? It was a conspiracy to obstruct the grand jury investigation by this witness, Zobke, perjuring herself. The count, you can see it's dividing the same conduct in a sense, this common scheme and plan, because the third count says with others, well, what does that mean, conspiracy, with others, obstructing the grand jury investigation. It's still that language in count 3 by having Zobke give a false statement to the United States Attorney's Office that is conducting the grand jury investigation. So it was the whole focus was the obstruction of the grand jury investigation. It's two acts aimed at the same thing. And, by the way, I'd note that it, according to the counts, it occurred at the same time. So we have this thing of common scheme and plan, closely related societal interests obstructing the grand jury investigation. Sotomayor Let's say it were an obstruction of the grand jury investigation with respect to one of the, call them obstruction charges, and then suborning perjury in the trial. Group them? Do you group those? Gershengorn Yes. You would group those two counts together because they are the substantially the same harm. If a, b ---- Sotomayor Even though one's a grand jury and one's the trial six months later? Gershengorn Oh, I'm sorry. I misunderstood the question. Sotomayor Sorry. I probably was. Gershengorn I think that you start to get, as you create facts that distance the conduct from each other, for example, time sequence and what the proceeding is, you get into creating situations where you can make arguments that they are not closely related societal interests. There's something out there. You have a trial. It's a good question. It's a fine line. So I would say it becomes gray is about the best, I would say. I'm sure as you proceed out, supposing two years later, something like that, where you have enough time difference that's gone on that ---- Sotomayor Is that a revocation of supervised release or something? Gershengorn Yes. Yes. Yes, Your Honor. Now, the government, as far as on both paragraph B of the obstruction of the grouping guideline and paragraph C, they rely on this application note 5, and it's actually an exception described in application note 5 having to do with, well, if you ---- sometimes you may have multiple counts. This is what Judge Lynch has referred to. There are two things about that, that where I submit the government is wrong. First of all, as far as application note ---- as far as paragraph B is concerned, the application notes expressly say application note 5 applies to paragraph C. It does not apply to paragraph B. So we can't get to where the government wants to go with this and the government does rely on paragraphs on pages 34 and 35 of its brief on this application note 5 with respect to its argument against paragraph B. So that's one basis. And now I'm going to jump to paragraph C. Breyer What do you do with paragraph C, then? Gershengorn Well, paragraph C, there is a second argument here because this guideline lets you make more than one argument. It says under application note 7 that the paragraphs, more than one paragraph can apply. Now, if we prevail on one paragraph, then it should be grouped. But there are two arguments going on here. If B doesn't apply, C applies. So if you then look at the argument that we're making with respect to paragraph C, I submit that that exception does not apply here, and this is why. And it's at first reading, it's tough to understand this exception, what it says. And if I could read it to the Court and then explain it to the Court, what it means, I think it becomes clear. This exception says, sometimes several counts, each aggravating factor, each of which are an aggravating factor to a more serious count, but the guideline for the more serious count, and this gets confusing, provides an adjustment for only one occurrence. Now, really, I had trouble with that, frankly, but it became clear to me once I read it gave this example of robbery and assault, and it became absolutely clear what it was talking about, and then you look back at the language and you see what it means. What is the --? Let's take the robbery example. So you have the robbery guideline. That's 2B3.1. And so it gives a certain base offense level. And then you look at that guideline itself, the robbery guideline itself, and then it says, well, if an assault happened in that case, you add so many levels. And if the assault was serious physical injury, you add even more levels. So within the guideline itself, the more serious guideline that happened, if it has these aggravating factors and it only has one occurrence of the factor, in that case, in the robbery guideline, one assault. It only accounted for one assault. So this exception language in Application Note 5 is saying, well, what if you have more than one assault, for example, more than one occurrence, where the guideline for the underlying count only gives for one occurrence? Well, then you go through this thing where you say, well, the more serious one you count, the other one you group separately. That's not what we have here, because you say, what is the underlying count here? The underlying count here involving the obstruction counts is the drug charge. You then look at the drug guideline. That's 2D1.1. And we know that with that one, how many drugs, how much, what's the quantity? But then it also has aggravating factors in there. And they're things like, there are five of them, but was a weapon involved? Was an aircraft used? Was it distribution of drugs in prison? There's nothing in there about obstruction. But there is a general adjustment for obstruction. There is. So we get back, how do we analyze this? So what I'm saying is that, first of all, with this Application Note 5, it only applies to C. So this whole argument about B, if it's correct, you don't even get into that issue. Just look at B. And then also this Application Note 8 of the grouping guidelines, which says the first thing you do is you look at the closely related counts. And if they should be grouped, because they're closely related, you group those first. Kennedy. Oh, wait, wait, wait. Let's try to work this through. Kennedy. Okay. Kennedy. C says when one of the counts embodies conduct that is treated as a specific offense characteristic in or other adjustment to the guidelines applicable to another count. So you agree that that applies to obstruction? Yes. Because it's an other adjustment to it. It's not a specific offense characteristic. Yes. Okay. So how do we distinguish the example of the bank robbery with the two assaults from the example of the drug offense with the two obstructions? Is it, I thought where you might be going, is it that the assault charges are not groupable and, therefore, they're each separate? They're kind of separate groups? Is that the distinction? It's been we have to see if this exception applies in if we're dealing with the paragraph C analysis. And I'm saying this exception in Application Note 5 of the grouping guideline does not apply because it applies to a very narrow situation that we don't have here. Well, what is that situation? Because the example so far that is cited in the rule sounds so far just like this. That is to say, there are two obstruction counts. The obstruction of justice adjustment only counts once. You don't get four points if you obstruct justice twice. You only get two points. So that seems just like the robbery plus assault where the solution of the guidelines and it's not just the application note that provides it, it's subsection C that's being group, as it were, one of those assaults with the robbery and the other one remains freestanding and what happens to it happens to it and you apply the grouping rules. Why don't we do the same thing with two obstructions? Why do we first group them and then, notwithstanding that the obstruction of justice adjustment says nothing about adjusting for a group of why don't we do the same thing that we do with the assaults? Several reasons. One I would say is that the approach I'm suggesting as the interpretation here is consistent with overall what the grouping guideline is supposed to do, which is it's supposed to limit the ability. One prime reason is that there can be charging decisions by the government where it's substantially the same harm. And so if we go down, we can get heavily involved in this kind of, you know, if this says this or that says that, but if we come out in the end where we're not looking at whether something is closely related or not where it's substantially the same harm, which I submit can happen with this analysis that's going on. Supposing, for example, as a hypothetical, I was trying to think of something, but if someone goes in, same person, perjury one day in front of the grand jury. Next day, perjury again in front of the grand jury. It's a separate act. You could charge them as separate counts. Well, clearly they're part of the same harm going on. And yet under this interpretation, you would, because there are more than one count, you would group one with the more serious and the other and it would be wrong. And there's no way, theoretically, you would say that that should be so. It would violate each. And that's not so about the assaults in the other example because there are two different victims. The only ground that this, with the two assaults, is this exception and exception language. And what I would point to, and it took me time, it was trouble for me, but I finally understood it. It's the language in Application Note 5 that I'll point to that makes it clear. And that is it's saying, but the guideline for the more serious count. What does that mean? The guideline in that, it clearly, when you look at the robbery example, but the guideline for the more serious count is the robbery guideline. In our case, it's the drug guideline. You have to look at those guidelines. So when you look at the robbery guideline, it has its assault is a factor that has only one occurrence. In the drug guideline, there's nothing about obstruction. It would be analogous if there was an aggravating factor as one of the things, like weapon, aircraft, prison, obstruction of justice, one factor. Kennedy. Why does it matter that the commission put the obstruction enhancement in an across-the-board provision rather than a specific offense characteristic provision? It still applies to the drug guideline. It happens to apply to other things, too, but it applies to the drug guideline every bit as much as using an airplane or any of the other specific offense characteristics. Right. But what I would say is what makes sense, I think. If we're in agreement, if we're saying, look, the problem that the grouping guideline is trying to address is we're not going to have more than one punishment for substantially the same harm. And so if that has to be somewhere in this mix of how it's interpreted that you come out that way. I submit how you come out that way, is you look at Application Note 8 in Guideline and the grouping guideline, which says the first step is you group, you look at what counts are closely related, and you group them. How do you know if they're closely related? Does A, B, C, or D apply? If this exception is really out in left field, I would say. I'm just saying it doesn't apply. The general rule is what I'm saying. This exception in Application Note 5 is an exception and a narrow exception. The last thing I would say is just simply to look at the plea agreement here, too.  all the time, it seems. At least we have many, many appeals in which exactly this happens, that the plea agreement says one thing, the district judge and sometimes the probation department or sometimes, not until it gets to us, somebody figures out that that was wrong. Well, we do have, on the argument I'm making here, probation twice is in agreement with the position I'm saying, and the plea agreement not only says it, but it says  why. It's saying it's a common scheme and plan. There's substantially the same harm. So what happened here was that actually the government and the council at the trial level, they entered into an agreement and said, look, we can advocate our positions. The government has a position here, and there's an ambiguity, frankly, in the plea agreement because there was, it said, came out with level 31. Well, how do you get to level 31? They say, well, you get to level 31 by what we say. But then it doesn't explain how it was so explicit as to that the agreement that paragraph B applied, and they were closely related accounts. So I would simply say when you have an ambiguity, the plea agreement is strictly construed against the government, and therefore, it is our interpretation. Thank you. Roberts. Thanks, Mr. Bryan. You've reserved a minute for rebuttal. Mr. McGinley. McGinley. Thank you. May it please the Court, Ian McGinley for the United States. I also represented the United States below. Just quickly on the standard of review, it is clear that this is a plain-error standard. At resentencing, Judge Castell asked many times if there were issues with the guidelines. Defense counsel said no. And as a result, this issue was not litigated before Judge Castell, and now it comes to you on plain-error review. The fatal flaw with the appellant's argument here is that he overlooks 3C.1.1, which is the obstruction guideline. That guideline specifically says when you have the underlying offense, here's the narcotics offense, and the obstruction offense, you look to 3D.1.2c, which is the land. And by the way, under that guideline, it says you group the count with the underlying offense. So in not the group, right? So in that case, you have an issue where you have to look to the commentary of the guideline there, which says, well, what do you do when there's actually more than the one count which is referenced in subsection C? And the guidelines say there, and as the Court, the Fourth Circuit, and Jones followed, they say, well, you look to which is the more serious, you group that with the underlying offense, and then the other obstruction count stands on its own. And that's exactly what Judge Castell did here. Kennedy. If you are reading the commentary in Note 5, Mr. Bryan didn't grab on what I was throwing out to him, but is it not the case that in that assault, he's saying that you have to take some account of the fact that these obstruction counts are closely linked? And in the example that's given, you have two separate assaults against two separate victims. In that instance, you would not group those two assault charges into the same group, right? You would treat them as separate groups. And then it makes perfect sense to go take the next step and say, they give an example where one is literally more serious than the other, but I suppose if they were the same, neither or both had serious bodily harm, you would take one and not the other, because otherwise you are not really accounting for a completely separate, at all, for a completely separate assault. And, of course, the grouping rules are all about making sure that that doesn't mean you just add on cumulative penalties for the separate groups. You have a complicated calculation to decide how much to count it. With obstruction, it's not clear. I mean, here, I don't think the government's disputing that other things being equal, if these were just, if you're just applying the grouping rules to two obstruction, these two obstruction counts by themselves, you would group them, because they involve the same harm. That's correct. Right? So what Mr. Bryan is saying is that's different than this other one, because once you group them, then they really should be tacked on together to the main charge. Now, I agree there's a substantial linguistic problem with doing that arising out of the way the obstruction adjustment is worded, but certainly it seems to make sense, what he's saying. The — I take Your Honor's point that if there are two separate victims, as in the group one where someone gets hurt, and to not group the other. I do think here it makes similar sense, but for a little bit of a different reason, in that the guidelines do not account for, then, two obstructive acts, in this case getting someone to perjure themselves before the grand jury. But it wouldn't either account for two obstructive acts if there were no drug charge. That's correct. They would be grouped, and they would be treated as basically two parts of the same whole, and the obstruction guideline would be calculated appropriately. Don't just — It would meld the two in that circumstance. So that — and his argument is, well, why doesn't it meld the two even in this circumstance where the obstruction goes along with the drug charge? And I think my answer to that, Your Honor, is just generally there's just more harm than when you have an underlying count and then two obstructions. Just one very just key point, factually, just to point out, because the appellant made it sound like, you know, the government kind of laid down these charging decisions, and I know he didn't suggest this, but the whiff of the government kind of manipulated this. This was a negotiated plea. The defendant pled to an information. There were plenty benefits to him in that plea. He was originally charged with death resulting, which would have carried a 20-year man-min, a guidelines of life under this negotiated plea that he agreed to. He was capped at 20 years. The drug count was pled under 371. So he had many reasons to enter into this plea, and he did. And I would just note, unless there were other questions on grouping, that the other reasonableness, the substantive and procedural reasonableness was substantial here. Judge Castell considered all of the factors that the appellant now raises about his rehabilitation, attending story, telling, all of those factors. He also accounted for the fact that on resentencing, the defendant had a separate Federal embezzlement conviction at the time, which undercutted his argument that he was doing this all for his workers. So unless the — Undercut his argument that what? Your Honor, at the first sentencing, the defendant had said, you know, despite what I did with these drug and obstruction crimes, I was a good boss, I took care of my workers. And then after that, he was subsequently convicted of stealing from those exact workers. That was a new fact at de novo sentencing, and I think justified, along with a number of other factors, why Judge Castell went above the guidelines by a small amount. So unless the Court has any further questions, the government would rest on its submission and ask that the judgment be affirmed. Thank you, Mr. McGinley. Brian. To be clear on the preservation issue, I think the easiest thing to do is read the short excerpt from the record here. The judge asks defense counsel, if there is anything the defendant wishes to say … Who are you reading from? This is Appendix Page 508. If there is anything the defendant wishes to say on the guideline issue as framed by the government's submission, I'd be happy to hear it. This has to do with this grouping. Defense counsel. Your Honor, I can go back and look at the government's submission. Our position, as Your Honor knows, so there's a prior history, is that we are comfortable with the calculation set forth in the PSR. What she's referring to is, the calculation is, paragraph B applies. We are also mindful that we have stipulated, we have a stipulated calculation and a plea agreement from which we are not backing away. I would say that that is, in a nutshell, in the most succinct way, preserving the issue. The judge knew exactly what she was talking about. It is a preserved issue. Government has mentioned 3C1.1, Application Note 8. And what I would simply say, as you look at that, and it, the government says, well, it only says, obstruction offense, and it doesn't say offenses. What I simply would say, what that means is, it's silent. And if it said offenses, you would group these counts together. But it doesn't mean because it doesn't talk about it. There's not an adverse inference. It just simply means that that grouping paragraph in the obstruction guideline doesn't cover this. I want to go back. I have to go back to the plain error thing. Yes. Because I've been reviewing this. This is the second time that this sentence occurred, right? Yes. And the judge had already, at the previous sentencing, given his grouping analysis and come to Level 31. Now, at this point, Mr. Hoey's lawyer says, we're comfortable with what's in the PSR. That strikes me as a far different thing than saying, we think the PSR was correct, and you should not do what you did the last time. The judge then says, I'm going to do what I did the last time. I've independently reviewed the guidelines. This is what I do. And then we have two lawyers speaking, a different lawyer speaking then on Mr. Hoey's behalf. And nobody, neither of those two lawyers at any point mentions that they have some objection to the judge's grouping calculation, let alone lays out any kind of analysis as to why that would be incorrect. I'm sorry. Are we talking about the initial sentencing or the re-sentencing? No. This is the one you're talking about, 508. Is that not the re-sentencing? Yes. It is the re-sentencing. Yeah. I know the language isn't great. I think it's made the threshold. And the other thing I would say about it is that the issues raised, the point of objections in preservation is, is the judge made aware of the issue that a ruling has to be made to resolve? The language says to the judge, Judge, we object to the way you analyzed it previously, and we don't want you to do that? My argument is it does. I wish it were better language. Was the objection raised the first time in specific? It was not. It was not. You see, that's the problem. Yeah. But I would say, because we're looking at this de nouveau in re-sentencing, this is certainly what we'd be relying on. And just to help the Court at all, I mentioned Application Note 8 of the grouping analysis. It's a couple, two sentences. Ordinarily, the first step in determining the combined offense level in a case involving multiple counts is to identify those counts that are sufficiently related to be placed in the same group of closely related counts. This section identifies four situations in which counts are to be grouped together. I simply mean to — I would say what that means is you first look at the obstruction counts. Are they closely related? You look at A through B, A through D. Does it apply? Then you go on, and you would apply, then, that group as being an adjustment, as an obstruction adjustment to the underlying count, the drug count. If I may, this is not so much directed to you, but I notice there are spectators here, and it is possible that some of them may be people who are related either to Mr. Hoey or to the deceased victim in the case. And it just occurs to me that someone who has an interest in the case might wonder, given both the substantive harms that Mr. Hoey caused and, for that matter, the various mitigating circumstances that he claims, that we're talking about something that sounds like Greek rather than like anything to do with how much punishment should be meted out to Mr. Hoey for his admitted crime. And something I always pointed out when I was living with mandatory guidelines in the district court for the benefit of any such people with an interest in the case is that, first of all, what we're talking about, however technical it sounds, is actually related to the question, although it's phrased in a very technical way in relation to these sentencing guidelines, it is really about how one assesses the seriousness of at least one piece of Mr. Hoey's conduct. And secondly, whatever happens with our determination on that, if, for example, it goes back to the district court, fortunately for the world, these guidelines are no longer mandatory and the judge will have every opportunity to make a global assessment of the circumstances and, indeed, another argument that the government essentially makes here is that the judge already has made a global assessment of the overall conduct. So this may sound like a technicality, but it does have a bearing on something seriousness and that the technicality part of it is not the exclusive thing that the courts consider in deciding what's an appropriate sentence. Now maybe the spectators are all just people who wandered in and have no interest in this case at all, but it always felt very odd to me when I knew, as a district judge, that the people listening to the sentencing had a vital interest in the case, that the language in which we sometimes discuss these things seems so divorced from the actual seriousness of the crime or the actual nature of the person that I didn't want people to get a wrong impression of what the courts are ultimately concerned with here. Yes, Judge Lynch, and maybe it would be even helpful for me to say that I fully recognize that this is just a step to an ultimate decision. If this were to have to be recalculated back by the district court, then the district court is fully within its province at that point and would look at the entire case and his conduct under the Section 3553A factors. Exactly. Thank you, Your Honors. Thank you, Mr. Bryant. Thank you, Mr. McGinley. We'll reserve decision in this case.